THE GEORGE S. TICE. NEW YORK & ALBANY LIGHTERAGE CO. v. DAVIS, Director General et al. SARGENT BARGE LINE, INC., v. SAME.

(Circuit Court of Appeals, Second Circuit. January 16, 1923.)

Nos. 125, 126.

1. Collision ☞105—Evidence held to require finding that master of tug saw or should have seen imminent danger of collision in passing port to port.

Notwithstanding the positive testimony of the master of a tug injured by collision that his tug was suddenly and without his fault blocked in and forced aground by the blocking of the channel by the approaching tow, evidence *held* to render his testimony improbable, and to warrant a finding that he saw or ought to have seen that an attempt to pass the other tow port to port was certain to result in collision.

2. Collision ☞95(1)—Absolute right to pass port to port will not justify tug running into collision that should have been seen to be probable.

Where one tug was at fault for having in tow about 25 light coal boats, having no helper and giving no signals, a tug approaching and attempting to pass port to port, under circumstances making a collision probable, cannot escape liability by asserting an absolute right to pass on that side of the channel, under the narrow channel rule; rules of navigation being subject to the rule of common sense that no one has a right to run into collision.

Appeals from the District Court of the United States for the Southern District of New York.

Libels in admiralty by the New York & Albany Lighterage Company and by the Sargent Barge Line, Inc., against James C. Davis, as Director General of Railroads, and the steam tug Ashbourne, which in

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

turn impleaded the steam tug Tice, of which the Tice Towing Line was claimant. From a decree finding both tugs at fault, the owner of the Tice appeals. Affirmed.

Samuel Park and Anthony V. Lynch, Jr., both of New York City, and Henry E. Mattison, of New York City, for appellant.

Macklin, Brown & Van Wyck and Pierre M. Brown, all of New York City, for appellee Director General.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

HOUGH, Circuit Judge. This case arises out of a collision between a tow in charge of tug Ashbourne and the tug Tice. The former tug had in tow about 25 light coal boxes, making 6 or 7 tiers; the latter was in charge of one vessel only on two short hawsers. The Ashbourne and tow were passing through the Arthur Kill, from Elizabethport toward Perth Amboy, and the Tice was going the other way.

At about Buckwheat Island, the dredged and only available channel for craft such as these tugs and their tows is 400 feet wide; on the Staten Island side of this channel is another 100 feet or so of water, impossible for the tugs, although a light coal boat can probably float there. The Ashbourne was herself about in mid-channel, perhaps slightly nearer the New Jersey shore; but there was on that side of the Ashbourne and her tow plenty of room for the Tice to pass in safety. It is admitted that the two tugs approached substantially head on, seeing each other plainly, as it was daylight, and each knowing the other's business. Neither blew any signals, and the Tice took the starboard side of the channel, intending a port to port passing.

The sole question of fact in the record, and the only ground of appeal is as to where the Ashbourne tow was when the Tice attempted this passing; i. e., when the tugs were about to pass each other. The Tice contends that such tow was then substantially straight behind the Ashbourne, so that no reason appeared why the other tug and her small and easily managed tow should not pass in the usual manner; while the Ashbourne asserts that the tow under the wind's influence and in the absence of any helper was tailing toward Staten Island and visibly blocking for the Tice the whole starboard half of the channel. There is no doubt that, before the Tice could travel from the Ashbourne's bow to the third tier of her tow, this blocking took place, and the Tice in trying to edge to starboard ran aground and while so fast was hit by a third tier boat, and also run into from astern by her own tow. Hence these suits.

[1] Undoubtedly the Tice's navigator testified positively in support of his owner's contention, viz. that he was suddenly blocked in; but the probabilities are against him, and all the other witnesses, including the men from both tows. We therefore agree with the court below that the Tice saw, or ought to have seen, that attempting to pass the other tow port to port was humanly speaking certain to result exactly as it did.

[2] The faults of the Ashbourne, in thus blocking the channel, in having no helper, and failing to call attention to the situation she had herself produced, are apparent and admitted. The Tice alone has appealed, and in effect insists on her right to pass port to port in this narrow channel. Of course that right existed, if she was entitled just then and at that place to pass at all. But over and underlying all the rules of navigation is that rule of common sense, so often referred to, that no one has the right to run into collision. That one vessel is obviously at fault does not justify another in running down her or her tow; a navigator may see how wrong another is, yet he must still avoid collision, if he reasonably can. Here the Tice could have waited or gone to the other side; we do not and cannot say that either course was to be chosen and the other shunned; we do say that it was a fault unnecessarily to insist on the impossible, even if the impossibility was obedience to the starboard hand rule.

The court below was right in finding both tugs at fault, and the decrees are affirmed, with one bill of costs.